Exhibit 1

2:22-cv-01013-RMG     Date Filed 03/30/22     Entry Number 1-1     Page 1 of 43

ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

STATE OF SOUTH CAROLINA )    IN THE COURT OF COMMON PLEAS
                        )
COUNTY OF CHARLESTON    )    Civil Action No. 2022-CP-10-_____
                        )
Paired Pay, Inc.,       )
                        )
                Plaintiff, )          **SUMMONS**
                        )
        vs.             )
                        )
                        )
ClearObject, Inc.       )
                        )
                Defendant. )

TO THE DEFENDANT ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this Complaint upon the subscriber, at the address shown below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

Barnwell Whaley Patterson & Helms, LLC

s/ *M. Dawes Cooke, Jr.*
M. Dawes Cooke, Jr. (S.C. Bar No. 1376)
P.O. Drawer H
Charleston, SC 29402
(843) 577-7700
mdc@barnwell-whaley.com
***Counsel for Plaintiff Paired Pay, Inc.***

January 31, 2022
Charleston, South Carolina

{01139470.DOC.1 }                    1

ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | Civil Action No. 2022-CP-10-_____ |
| | ) | |
| Paired Pay, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | **(Jury Trial Demanded)** |
| vs. | ) | |
| | ) | |
| | ) | |
| ClearObject, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW, Plaintiff Paired Pay, Inc. ("Paired Pay"), by and through the undersigned counsel, against Defendant ClearObject, Inc. ("ClearObject"), states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Paired Pay is a Wyoming corporation with its principal place of business in the State of South Carolina.

2.     ClearObject is a Delaware corporation that conducts business in the State of South Carolina.

3.     ClearObject and Paired Pay entered a contract whereby ClearObject agreed to provide services to Paired Pay. ClearObject has breached and continues to breach that contract, which has resulted and will continue to result in injuries to Paired Pay.

4.     This Court has jurisdiction over the subject matter of this action and the parties to this action arising out of the contract, ClearObject's breach of said contract, and the wrongful conduct complained of herein which has caused injury to Paired Pay in Charleston County, South Carolina.

{01139470.DOC.1 }                                         2

ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

**FACTS**

5.     In January 2020, Paired Pay and ClearObject entered into a Statement of Work, under which ClearObject agreed to provide certain information technology services to Paired Pay, described more fully in Exhibit A hereto, which is incorporated herein by reference.

6.     In July 2021, Paired Pay and ClearObject entered into a Project Change Request, which extended and expanded the services that ClearObject was to provide to Paired Pay.  The Project Change Request is set forth in Exhibit B hereto, which is incorporated herein by reference.

7.      Under the aforesaid contract, as modified by the Project Change Request, ClearObject agreed to provide a dedicated Product Team consisting of a Product Owner, a Full-Stack Developer (Smart Contracts), a Full-Stack Developer (Front End Integration), a Back End Developer, a Data Engineer/QA Leader, and a UI/UX Specialist.

8.     ClearObject failed to provide the level of service that it contracted to provide. During the Contract period, there was continuous member turnover on the Product Team as well as a shift from "dedicated" Team members to "designated" Team members who worked only part-time on Paired Pay workload.  This resulted in Paired Pay grossly overpaying for the services for which it contracted. It also resulted in loss of efficiency and lack of effective communication between ClearObject's Product Team and Paired Pay and the other product development contractors with whom ClearObject was supposed to be working.  Paired Pay's workflow is extremely time sensitive, and ClearObject's breaches of the contract have caused, and will continue to cause, extensive damage to Paired Pay.

9.     ClearObject's breaches of the contract have been accompanied by fraudulent acts, including but not limited to:

{01139470.DOC.1 }

ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

a. Concealing the breach by misrepresenting that it was in fact providing a dedicated Product Team;

b. Misrepresenting that the contract does not require ClearObject to provide a dedicated Product Team;

c. By suspending performance under the contract and threatening to withhold work product in order to force Paired Pay to pay for services that it did not receive; and

d. In filing a preemptive lawsuit against Paired Pay in an Indiana court, when Paired Pay does not do business in, and has no contacts in Indiana.

**FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract)**

10. Paired Pay repeats, realleges, and incorporates herein the allegations contained in Paragraphs One (1) through Nine (9) of this Complaint as if fully set forth herein.

11. The aforesaid agreements constitute a valid contract between Paired Pay and ClearObject supported by adequate consideration.

12. ClearObject materially breached the contract by failing to provide a consistent, dedicated Product Team for any period during the contract.

13. ClearObject's failure to perform its duties and obligations under the Contract amounts to a material breach of the Contract.

14. As a direct and proximate cause of ClearObject's breach of the Contract, Paired Pay has suffered actual and consequential damages by having overpaid ClearObject for the services it provided to Paired Pay and by experiencing extensive disruption, loss of efficiency, and disruption of critical communication and collaboration between ClearObject and Paired Pay and Paired Pay's other development contractors.

ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

15.    As a result, Paired Pay is entitled to judgment against ClearObject for actual and consequential damages in an amount to be determined by a jury.

## FOR A SECOND CAUSE OF ACTION
### (Breach of Contract Accompanied by a Fraudulent Act)

16.    Paired Pay repeats, realleges, and incorporates herein the allegations contained in Paragraphs One (1) through Fifteen (15) of this Complaint as if fully set forth herein.

17.    Prior to executing the Contract, ClearObject represented to Paired Pay that it would provide a dedicated Product Team of full time Team members working only on Paired Pay work.

18.    Thereafter, ClearObject committed the fraudulent acts described in Paragraph Nine (9) above.

19.    By reason of the foregoing breach of contract accompanied by fraudulent act, ClearObject is liable to Paired Pay for actual and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Paired Pay prays that this Honorable Court enter judgment against ClearObject as to each of Paired Pay's above causes of action, awarding Paired Pay actual, consequential, and punitive damages and such other relief, fees and costs as may be appropriate.

Respectfully Submitted,

Barnwell Whaley Patterson & Helms, LLC

 s/ *M. Dawes Cooke, Jr.*
M. Dawes Cooke, Jr. (S.C. Bar No. 1376)
P.O. Drawer H
Charleston, SC 29402
(843) 577-7700
mdc@barnwell-whaley.com
***Counsel for Plaintiff Paired Pay, Inc.***

January 31, 2022
Charleston, South Carolina

{01139470.DOC.1 }                                  5

# EXHIBIT A

ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462



# Statement of Work:

Quantum Ledger Database Development and Managed Product
Team as a Service:
Paired Inc.

Version 2.3

January 8th, 2020

ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

# 1   Introduction and Background

Paired Inc™, the "Subscriber", is a technology firm using a multi-pronged strategy to deliver automated site management and an industry-first record of all information and activities. SiteSUPER™ is an autonomous, intelligent & integrated project delivery system ensuring data security; workflow process and efficiency; and industry interoperability.  Working within residential construction, SiteSUPER™ eliminates major inefficiencies by using the most advanced technology to modernize every phase of construction.  The end product is a verifiable record of construction containing proof of every part installed, every person involved, and every related document.

ClearObject, the "Provider", is pleased to provide this statement of work for Product Team as a Service (PTaaS) professional services which reserves ClearObject resources for a set amount of capacity per sprint.  A ClearObject Product Owner will work with Subscriber SMEs to establish and maintain the product vision, product roadmap and backlog that will guide the development phase.  This proposal deck provides a summary of the potential future themes of the product and the pricing estimates to develop those as the product offering goes from pilot to production.

# 2   Objectives

This section describes the work to be provided by ClearObject and its sub-contractors ("Services") under the terms and conditions of the agreement identified in the signature block of this SOW, the "Agreement."  In addition, your responsibilities are listed.

Changes to this SOW will be processed in accordance with the procedure described in Appendix A: Project Change Control Procedure.  The investigation and the implementation of changes may result in modifications to the Estimated Schedule, Fees and Expenses, and other terms of this SOW.

# 3   Project Scope

In this project, ClearObject will:
- Develop and deploy a Quantum Ledger Database during a fixed cost, 2 month activity
- Deliver specific key deliverables outlines in a 3 month Milestone-based Development Plan
- Provide Product Team as a Service through an assigned, named Project Manager:
  - o  Project Manager will work with Subscriber to evaluate product backlog on a continuous basis each sprint in order to drive maximum value to Subscriber's team.



ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

- o   Project Manager will work with Subscriber to define an initial product release. Within that release product owner will agree with Subscriber on priority. Once feature priority has been agreed upon, the Project Manager will provide Subscriber with a forecast for delivering that release.
  - o   Release forecast and backlog will be used to provide updates at two-week or monthly intervals, per Subscriber's preference, on development status & remaining feature development during sprint cycles.
  - o   Provide ongoing development of Subscriber's digital product.
- ● ClearObject will provide application and infrastructure managed services
  - o   24 hours/7 days a week service desk support provided through: 1) online service portal, 2) email, and 3) phone support
  - o   Amazon Web Services (AWS) Support included
  - o   Provide ongoing administration, configuration, OS upgrades, and monitoring of Subscriber AWS projects
  - o   Perimeter security scans, security certificate installation, and SSL analysis
  - o   Architecture and deployment documentation provided and maintained
- ● ClearObject will provide AWS infrastructure resources
  - o   Subscriber project will be hosted and managed by ClearObject on AWS
  - o   AWS invoice provided monthly

# 4   Fees and Expenses

ClearObject will provide the required personnel to lead and develop Subscriber's digital product. The ongoing services include ClearObject's Product Team as a Service (PTaaS) team who will be engaged in product development activities as described below.

---

**Activity 1 – Quantum Ledger Database Development**

In this activity, ClearObject will perform services for a period of 2 months. Services include:

- ● Provide a fully managed ledger database that provides transparent, immutable and cryptographically verifiable transaction log.
- ● Provision a single instance of Quantum Ledger Database (QLDB) on the AWS platform
- ● Coordination with point of contact at Damal on key data integration
- ● Initiate engagement model and continue to support Activity 2 – Milestone Delivery Plan

Deliverables

- ● Define, design and document a data dictionary (with direction and input from the Subscriber)

---



ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

- Define, design and document an API to support 3rd party integration (utilizing AWS Lambda)Verify loading and the ability to query data within QLDB
- Deliver retrieval of a hash for verification purposes as defined by the Subscriber

**Fees:**

- $40,000
- 2 months in duration
- Subscriber to cover access/licencing costs associated with third-party API's

**Activity 2 –Monthly Recurring – Milestone-based Development Plan**

In this activity, ClearObject will perform services for a period of 3 months.  Services include:

- Delivery of Milestone-based Development Plan shown in Figure 1:



**Figure 1.  Milestone-based Delivery Plan**

- Provide ongoing product management services including, but not limited to story mapping, prototype development, backlog grooming, and bi-weekly development updates in support of Subscriber's MVP solution and subsequent releases.
- Provide software development and testing services
- Provide ongoing operational support of the application and cloud infrastructure

Deliverable Materials:
- Product artifacts such as but not limited to:
    - Clickable solution prototype
    - Architecture diagram
    - Release plan
    - Product roadmap
    - Data glossary
    - Cloud Environment



ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

o   CI/CD Pipeline

**Fees:**

- $35,000 per month
- 3 months in duration

### Activity 3 –Monthly Recurring – Product Team as a Service

In this activity, ClearObject will perform services for a period of 7 months. Services include:

- Provide dedicated product and development resources
- Provide ongoing product management services including, but not limited to story mapping, prototype development, backlog grooming, and bi-weekly development updates in support of Subscriber's MVP solution and subsequent releases.
- Provide software development and testing services

Deliverable Materials:
- MVP solution and subsequent releases
- Product artifacts such as but not limited to:
  - o   Clickable Prototype
  - o   Architecture Diagram
  - o   Product Backlog
  - o   Product Roadmap
  - o   Product Release Plan

**Fees:**

ClearObject will provide a tiered pricing model for Activity 3.  Subscriber will specify the appropriate Product Team tier, based on desired development velocity:

| Product Team Tier | Monthly Fee |
|---|---|
| Start-up | $37,500 |
| Scale | $46,400 |
| Enterprise | $52,900 |

Unless otherwise specified by Subscriber, Product Team will be charged and operated at the 'Scale' tier.  Subscriber will be able to change Product Team tiers monthly with a 30 day notice period.



ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

<u>**Activity 4 – Monthly Recurring - AWS Infrastructure Managed Services**</u>

In this activity, ClearObject will:

- Provide AWS infrastructure metered charges per month
- Provide ongoing operational support of the application and cloud infrastructure

Deliverable Materials:
- AWS Usage Report

**Fees:**
- Metered AWS infrastructure usage charges per AWS pricing: https://aws.amazon.com/pricing/.
- $2,500 or 40% of actual AWS charges.  This fee is waved during the 12 month duration of this statement of work.

Payment schedule will be as follows:

| | |
|---|---|
| **Monthly Fees for Activity 1:** | **$20,000** |
| **Quantity of Payments for Activity 1:** | **2** |
| **Monthly Fees for Activity 2:** | **$35,000** |
| **Quantity of Payments for Activity 2:** | **3** |
| **Monthly Fees for Activity 3 (based on Product Team Scale):** | **$46,400** |
| **Quantity of Payments for Activity 3:** | **7** |
| **Monthly Variable Fees for Activity 4:** | **(based on usage)** |

ClearObject will invoice monthly based on the invoice schedule for this SOW.  Amounts are due upon receipt of invoice and payable within 30 days.

# 5   Standard Business Practices

## 5.1   Change Control

If there are any changes to the presented scope of work for this project that are initiated by Subscriber before or during the process, deviations will be managed through the procedure described in Appendix A: Project Change Control Procedure, and may result in adjustments to the Project Scope, Estimated Schedule, Fees and Expenses and other terms of this SOW.  These adjustments may include additional charges on a time-and-materials or fixed-fee basis,



ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

determined and agreed upon by Subscriber at the time of change approval.

## 5.2   Disclosure

ClearObject never shares client information with outside parties without prior formal consent. The fully executed Subscriber and ClearObject Mutual Confidentiality NDA will apply to this SOW.

## 5.3   Standard Assumptions

The following are standard assumptions that are typical for a ClearObject engagement:

1. Subscriber will assign a Project Lead that will serve as key point of contact for communication, status, project tasks, etc.
2. All planned sprint activity will be reviewed with Subscriber and approved prior to the start of the sprint to ensure the available story points are utilized on activities aligned with Subscriber's business objectives.
3. Unless explicitly stated, all work is expected to be completed during normal business hours. Normal business hours are defined as between the hours of 8:00 am and 5:00 pm EDT, Monday through Friday, excluding federal holidays.
4. Work under this SOW will be performed at a Subscriber location and remotely.
5. Change Order requests will require a pre-approved budget to complete a brief impact analysis including the related work stream modifications and effort before a statement of change can be produced.

## 5.4   Laws, Regulations and Statutes

Subscriber is responsible for the identification of, interpretation of, and compliance with, any applicable laws, regulations and statutes that affect its applications or business.

ClearObject is responsible for the identification of, interpretation of, and compliance with, any applicable laws, regulations and statutes that affect its applications or business.

## 5.5   Data File Content and Security

Data at rest and in transit, once on the cloud platform, will be encrypted by the cloud platform provider.  Subscriber is responsible for providing actual content of any data file, selection and changes.  ClearObject is the data steward providing controls on the data access and use.



ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

### 5.6    Additional Terms and Conditions

#### 5.6.1    Term and Termination

This Agreement shall commence on February 1st, 2021, the "Effective Date" and shall continue for a period of twelve (12) months (the "Initial Term") and shall automatically renew for successive twelve (12) month terms (each a "**Renewal Term**") unless Subscriber cancels such renewal upon not less than ninety (90) days prior written notice to Provider.  The Initial Term and any Renewal Term are collectively referred to as the "**Term**".

During the initial three (3) months, until April 30th, subscriber may cancel with no less than thirty (30) days prior written notice to Provider.

#### 5.6.2    Required Consents

Prior to making your facilities, software, hardware, networks or other similar resources available to ClearObject, you will promptly obtain any licenses or approvals necessary for ClearObject or its subcontractors to use, access and modify such resources to the extent necessary for ClearObject to perform the Services, including the development of any Materials. ClearObject will be relieved of its obligations to the extent your failure to promptly obtain such licenses or approvals adversely affect ClearObject's ability to perform its obligations.  If a third party asserts a claim against ClearObject as a result of your failure to promptly obtain these licenses or approvals, you agree to reimburse ClearObject for any costs and damages that ClearObject may reasonably incur in connection with such claim.

#### 5.6.3    Amazon Web Services Terms of Service

The terms under which Subscriber shall be entitled to use the Amazon Web Services platform are as set forth in the Amazon Web Services Service Terms, which are available at https://aws.amazon.com/service-terms/ and as may be amended by Amazon Web Services. Subscriber agrees to accept and comply with the then current Amazon Web Services Service Terms. The Services provided by Provider hereunder do not include any warranties of performance related to the Amazon Web Services Platform, and Provider shall not be liable for the operation, performance, or content of the Amazon Web Services Platform. Provider is authorized by Amazon Web Services to provide "standard support" for the Amazon Web Services Platform so long as Subscriber complies with the terms of this Agreement.

### 5.7    Completion Criteria

ClearObject will have fulfilled its obligations for the Services under this SOW when any one of the following first occurs:
   a.  ClearObject provides the number of months specified in "Fees and Expenses" or in any subsequent Change Authorization



ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

b.  Subscriber or ClearObject terminates the project in accordance with the provisions of this Agreement

## 5.8   Schedule

Services for Activity 1 will be provided after mutual contract execution, between a start date of February 1st, 2021 and end date of no later than March 28, or on other dates mutually agreed to between ClearObject and Subscriber.

Services for Activity 2 will begin on the end date of Activity 1 and will last for a period of 3 months. Activity 3 will begin on the end date of Activity 2 and will renew after an initial 7 months unless cancelled by Subscriber.



## 6   Approvals

Each of us agrees that the complete agreement, which replaces any prior oral or written communications between us regarding this transaction, consists of the Statement of Work and its Appendices.

In entering into this SOW, Subscriber is not relying upon any representation made by or on behalf of ClearObject that is not specified in this SOW, including, without limitation, the actual or estimated completion date, number of hours to provide any of the services, charges to be paid, or the results of any of the services to be provided under this SOW.

An authorized signature on this page by you indicates you have the authority to enter into this agreement and your acceptance of this Statement of Work as a binding agreement.

| Agreed to: | Agreed to: |
|---|---|
| Paired Inc. | ClearObject Inc. |
| 3900 Leeds Avenue, Suite 102 | 8626 E. 116th St |
| North Charleston, SC 29403 | Fishers, IN 46038 |

By:                                                                         By:

_____            _____
Authorized signature                                      Authorized signature

**Executive Advisor**                                  VP of Digital Products
_____            _____
Title                                                              Title

**Justin Southward**                                   Benjamin E. Frame
_____            _____
Name (type or print)                                    Name (type or print)

**January 8, 2021**                                    January 11, 2021
_____            _____
Date                                                              Date



ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

# Appendix A:     Project Change Control Procedure

The following process will be followed if a change to this SOW is required.

a.  ClearObject and Subscriber may determine that it is necessary to exceed the scope and/or number of estimated hours for the Services as stated in "Fees and Expenses." In such event, Subscriber may authorize additional hours and funding by the written request of your SOW signatory.  The request must reference the SOW number. Through the end of the calendar year (i.e., December 31) during which this SOW is originally executed, additional hours, funding, and End-Date extension may be requested in writing, at the originally contracted hourly rate, specified in "Fees and Expenses."  If accepted or initiated by ClearObject, such letter or e-mail will act as a change authorization to this SOW.  All other requested changes will require execution of a Project Change Request as discussed below.

b.  A Project Change Request (PCR) will be the vehicle for communicating change.  The PCR must describe the change, the rationale for the change and the effect the change will have on the project.

c.  A PCR must be signed by authorized representatives from both parties to authorize implementation of the change.  Until a change is agreed to in writing, both parties will continue to act in accordance with the latest agreed version of the SOW.

Illustration 1 – Sample Project Change Request Form



# EXHIBIT B

ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462



# Project Change Request Form

| | |
|---|---|
| Customer Name: | **Paired Pay Inc.** |
| Project Title / ID: | **Smart Contracts Development, Paired Pay Function - Phase 3** |
| SOW Effective Date: | **July 1st, 2021** |
| Change Order: | **Version 1.1** |
| Change Order Date: | **07/16/2021** |

## Project Change Request Overview

ClearObject and Paired Pay Inc. have determined that a Project Change Request (PCR) is necessary to change scope, rates, and deliverables to the existing SOW Quantum Ledger Database Development and Managed Product Team as a Service, Effective July 1st, 2021.

## Changes

This section describes the work to be provided by ClearObject, and its subcontractors, ("Services") under the terms and conditions of the agreement identified in the signature block of this PCR ("Agreement").

Based on the additional project scope requirements of Smart Contracts and additional UI/UX capabilities, on Monday, July 1st, 2021, ClearObject will continue to support the development and deployment of the Paired Pay Inc solution with the following Product Team:

Product Owner
Full-Stack Developer (Smart Contracts)
Full-Stack Developer (Front End Integration)
Back End Developer
Data Engineer/QA Leader
UI/UX Specialist

This Product Team will allow the tasks initiated in Phase 2 to be completed at a consistent velocity. Specific deliverables are shown in the plan below:





ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

## clear object

Below is an architecture diagram showing the current definition of the solution. Items shown in green have been completed in Phases 1 and 2. Items shown in Black are to be completed in Phase 3. Items in red are currently outside the scope of Phase 3.



The Product Team will continue to plan specific feature deployments via bi-weekly sprint planning meetings with the customer. Based on this dedicated Product Team and current project requirements definition, it is anticipated that Phase 3 will be completed at the end of January 2022.

### Fees

- Product Team as a Service - $72,000 per month
- Services billed monthly at the end of each month

### Schedule Impact

- Change begins on the effective date and runs until the end of Phase 3.

### Approval

Each of us authorizes the implementation of this documented change to the existing referenced agreement within. This PCR replaces and/or augments any prior oral or written communications between us regarding this transaction, consists of 1) the Statement of Work and its Appendices, and 2) the Agreement identified below. In entering into this PCR, you are not relying upon any representation made by or on behalf of ClearObject that is not specified in the Agreement or this PCR, including, without limitation, the actual or estimated completion date, amount of hours to provide any of the services, charges to be paid, or results of any of the services to be provided under this PCR.

8626 E 116th St #300, Fishers, IN 46038  |  +1 (888) 850-2568  |  ClearObject.com

ELECTRONICALLY FILED - 2022 Jan 31 5:08 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

## clear object

An authorized signature on this page by you indicates you have the authority to enter into this agreement and your acceptance of this Statement of Work as a binding agreement.

| Agreed to: | Agreed to: |
|---|---|
| Paired Pay Inc.<br>3900 Leeds Avenue, Suite 102<br>North Charleston, SC 29403 | ClearObject Inc.<br>8626 E. 116th St., Suite 300<br>Fishers, IN 46038 |
| By: *[signature]* | By: |
| Authorized signature | Authorized signature |
| *Jeremy Blackburn* | |
| Name (type or print): | Name (type or print) |
| *President* | |
| Title | Title |
| 7/16/21 | |
| Date | Date |

8626 E 116th St #300, Fishers, IN 46038  |  +1 (888) 850-2568  |  ClearObject.com

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | Civil Action No. 2022-CP-10-00462 |
| | ) | |
| Paired Pay, Inc., | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFF'S MOTION FOR** |
| vs. | ) | **PRELIMINARY INJUNCTION** |
| | ) | |
| ClearObject, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

PLEASE TAKE NOTICE THAT Plaintiff Paired Pay, Inc. ("Paired Pay"), by and through the undersigned counsel, will move before this Honorable Court at such time as counsel may be heard, pursuant to Rule 65 of the South Carolina Rules of Civil Procedure, for an order granting a preliminary injunction that requires Defendant ClearObject, Inc. ("ClearObject") to deliver to Paired Pay the work product that it possesses as a result of the services that it contracted to provide to Paired Pay.

## FACTUAL BACKGROUND

Over the past several years, Paired Pay has been working to develop a hardware and software business management product for construction and other industries. *See* Affidavit of Justin Southward (attached hereto as Exhibit A). This development has been done by contracting with outside developers and contracted development teams to collaboratively build the software and hardware. One such development team is ClearObject. In January 2021, Paired Pay and ClearObject entered into a 1-year Statement of Work ("SOW"), under which ClearObject agreed to provide certain information technology services to Paired Pay. These services were broken up into four activities: Quantum Ledger Database Development, Milestone-based Development Plan, Product Team as a Service, and AWS Infrastructure Managed Services. The third activity, Product

{01152768.DOCX.1 }

Team as a Service, obligated ClearObject to "provide dedicated product and development resources" for seven months. The Product Team as a Service, as outlined in the SOW, was augmented with additional development and product resources via Project Change Requests (PCR) during the engagement. These additional resources were a significant cost increase over the original SOW. During the SOW negotiations, Paired Pay repeatedly expressed concern about the measuring of deliverables and the quantifying of efforts and costs. In response, ClearObject proposed the third activity to Paired Pay as "dedicated product and development resources." To make it expressly clear, in response to a 2020 email from Paired Pay requesting the definition of a dedicated resource, ClearObject stated "Dedicated — Full time, only working on [Paired Pay] workload." Under the SOW and the Project Change Request (hereinafter collectively referred to as the "Contract") (attached hereto as Exhibit B), ClearObject was obligated to provide a dedicated Product Team consisting of full-time members working solely on the Paired Pay project. However, during the Contract period, there was continuous member turnover on the Product Team and a shift from "dedicated" Team members to "designated" Team members who worked only part-time on Paired Pay workload. ClearObject failed to provide a complete dedicated Product Team during the Contract period. This resulted in Paired Pay grossly overpaying for the services for which it contracted as well as a loss of efficiency and lack of effective communication between ClearObject's Product Team and Paired Pay and the other product development teams with whom ClearObject was supposed to be collaborating. When several members of the team resigned, quit, or were re-assigned in October of 2021, Paired Pay began expressing its extreme frustration in numerous online video conference calls. Paired Pay repeatedly requested that ClearObject provide timesheets to prove the contracted Team was working solely on Paired Pay work. However, despite

{01152768.DOCX.1 }

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

initially agreeing to give Paired Pay such timesheets, ClearObject never delivered them to Paired Pay and said that it is against company policy to do so.

Even though ClearObject failed to provide the dedicated Product Team for which it contracted, it did produce certain work product. After months of video calls, conference calls, and written notices of breach and default, ClearObject asked Paired Pay for a "solution proposal." Paired Pay objected to paying for services that ClearObject failed to provide, so ClearObject "paused" communication with Paired Pay and its other development teams. Such communication with Paired Pay and other development teams was an integral and indispensable part of the service that ClearObject contracted to provide. The other development teams had to "pause" their work when ClearObject ceased collaborating with them or communicating with them at all. In addition to refusing to communicate as it was contractually required to do, ClearObject has refused to deliver the work product that it did produce. Currently, ClearObject is withholding the work product that it contracted to provide to Paired Pay and is refusing to produce it unless and until Paired Pay pays the full amount that ClearObject is demanding. Paired Pay's workflow is extremely time sensitive, and ClearObject's actions have caused, and will continue to cause, extensive and irreparable harm to Paired Pay and its affiliated companies and developers. By contrast, ClearObject will suffer no harm by being required to deliver its work product. The parties are litigating the amount owed on the contract, and ClearObject will be fully compensated for the services that it provided under the contract.

## LAW AND ANALYSIS

Actions for injunctive relief are equitable. *Doe v. South Carolina Med. Malpractice Liab. Joint Underwriting Ass'n*, 347 S.C. 642, 645, 557 S.E.2d 670, 672 (2001). "The purpose of a preliminary injunction is to preserve the status quo and prevent irreparable harm to the party

{01152768.DOCX.1 }

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

requesting it." *Compton v. S.C. Dep't of Corr.,* 392 S.C. 361, 366, 709 S.E.2d 639, 642 (2011). For a preliminary injunction to be granted, the plaintiff must establish that: (1) it would suffer irreparable harm if the injunction is not granted; (2) it will likely succeed on the merits of the litigation; and (3) there is an inadequate remedy at law. *Strategic Res. Co. v. BCS Life Ins. Co.,* 367 S.C. 540, 544, 627 S.E.2d 687, 689 (2006). "In evaluating whether a plaintiff is entitled to a preliminary injunction, the court must examine the merits of the underlying case only to the extent necessary to determine whether the plaintiff has made a sufficient prima facie showing of entitlement to relief." *Compton*, 392 S.C. at 367, 709 S.E.2d at 642.

**I.     Paired Pay is suffering and will continue to suffer irreparable harm if an injunction is not granted.**

ClearObject's withholding of the source code, development environments, and documentation associated with the development of the Project has severely impacted the development of numerous Paired Pay projects that were in various stages of development. These Paired Pay projects were being developed in accordance with the Project that ClearObject contracted to develop and provide to Paired Pay. The use of the Project with these various other Paired Pay projects would shorten development timelines which, in turn, would allow Paired Pay to place its products on the market significantly faster than it would be able to without the Project. Throughout the Contract term, ClearObject was aware of Paired Pay's reliance on the Project for the development of several similar projects as well as the time-sensitive nature of the various developments. Despite this, ClearObject consistently failed to provide the dedicated Product Team that Paired Pay contracted for and now refuses to deliver the work product that it did produce, despite numerous verbal and written notices and demands from Paired Pay. Paired Pay is suffering and will continue to suffer irreparable harm by ClearObject's failure to comply with its contractual obligations and refusal to deliver its work product to Paired Pay, including but not limited to,

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

damage to Paired Pay's business reputation, loss of business opportunities, and damage to relationships with customers and current and prospective developers. *See Peek v. Spartanburg Reg'l Healthcare Sys.,* 367 S.C. 450, 456, 626 S.E.2d 34, 36 n.2 (Ct. App. 2005) (recognizing that injunctive relief is appropriate to prevent loss of business or business goodwill).

## II.     Paired Pay is likely to succeed on the merits of this litigation.

"In evaluating whether a [party] is entitled to a preliminary injunction, the court must examine the merits of the underlying case only to the extent necessary to determine whether the [party] has made a sufficient prima facie showing of entitlement to relief." *Compton v. S. Carolina Dep't of Corrections*, 392 S.C. 361, 367, 709 S.E.2d 639, 642 (2011). The court must, based solely on the allegations of the complaint, "determine only the *likelihood* of whether [the party] will prevail on the merits." *Id*. (emphasis in original).

### Breach of Contract

To establish a claim for breach of contract, a plaintiff must establish: (1) the existence of a binding contract; (2) a breach of that contract; and (3) damages proximately resulting from the breach. *Hennes v. Shaw*, 397 S.C. 391, 399 (Ct. App. 2012). As set forth in the Complaint, the Contract between Paired Pay and ClearObject constitutes a valid and enforceable contract supported by adequate consideration. ClearObject materially breached the Contract by failing to perform its duties and obligations under the Contract, including its failure to provide a consistent, dedicated Product Team for any period during the Contract. As a direct and proximate result of ClearObject's breach, Paired Pay has suffered extensive damages by having overpaid ClearObject for the services it provided and by experiencing extensive disruption, loss of efficiency, and disruption to critical communications and collaborations between ClearObject and Paired Pay as well as Paired Pay's other development contractors. It is clear that ClearObject was obligated to

{01152768.DOCX.1 }

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

provide a dedicated Product Team under the terms of the Contract and that ClearObject failed to do so. The dedicated Product Owner left in October without any notice to Paired Pay and was not replaced until early January 2022.

Accordingly, the Court should find that Paired Pay is likely to succeed on its breach of contract claim against ClearObject.

### III.     Paired Pay has no adequate remedy at law and the injunction is necessary to preserve the status quo.

"An injunction is an equitable remedy; as such, it is available only where no remedy at law exists or where the legal remedy would fail to make the party whole." *MailSource, LLC v. M.A. Bailey & Assoc.*, 356 S.C. 363, 369-70, 588 S.E.2d 635, 639 (Ct. App. 2003). "An 'adequate' remedy at law is one which is as certain, practical, complete and efficient to attain the ends of justice and its administration as the remedy in equity." *Santee Cooper Resort, Inc. v. S.C. Pub. Serv. Com.*, 298 S.C. 179, 185, 379 S.E.2d 119, 123 (1989).

Paired Pay's staff and multiple other development teams from several companies that are working with Paired Pay have been stymied in their work because of ClearObject's failure to comply with its contractual obligations. More critically, Paired Pay's product rollouts and advancements have necessarily been delayed by ClearObject's refusal to provide Paired Pay with the work product that it contracted to provide to Paired Pay. The opportunities being delayed or lost because of ClearObject's failure to deliver the work product to Paired Pay cannot be quantified at this time. However, based on the direct impact ClearObject's actions have had on the various development teams, marketing and management teams, and manufacturing teams, the amount is undoubtedly more than the total amount of the Contract and will continue to grow exponentially. In the absence of an injunction, Paired Pay stands to lose its goodwill and relationships with its customers and other developers working diligently on Paired Pay platform projects. The other

{01152768.DOCX.1 }

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

contracted development teams, which have been paid, are in positions of contract breach with Paired Pay because they cannot complete their work without recreating what ClearObject created. ClearObject is aware of this but continues to hold the database and other work product hostage. Money damages cannot sufficiently compensate Paired Pay for these injuries and losses. As a result, because there is no available legal remedy that adequately addresses Paired Pay's irreparable harm, issuance of the injunctive relief sought is necessary.

The mandatory preliminary injunction is necessary to preserve the status quo, which is that ClearObject is contractually required to timely provide its work product to Paired Pay and its other developers. ClearObject currently possesses work product belonging to Paired Pay, which is becoming less useable and less valuable as time passes. Preliminary injunctive relief is necessary in order to maintain the status quo and prevent further irreparable harm.

**CONCLUSION**

For the reasons set forth above, Paired Pay's Motion for Preliminary Injunction should be granted and ClearObject should be required to deliver all of the contracted-for work product that it possesses to Paired Pay. This includes, but is not limited to, source code, development environments, and documentation associated with the development of the Project.

Respectfully Submitted,

Barnwell Whaley Patterson & Helms, LLC

s/ *M. Dawes Cooke, Jr.*
M. Dawes Cooke, Jr. (S.C. Bar No. 1376)
P.O. Drawer H
Charleston, SC 29402
(843) 577-7700
mdc@barnwell-whaley.com
***Counsel for Plaintiff Paired Pay, Inc.***

March 25, 2022
Charleston, South Carolina

{01152768.DOCX.1 }

EXHIBIT A

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF CHARLESTON ) | Civil Action No. 2022-CP-10-00462_____ |
| ) | |
| Paired Pay, Inc., ) | |
| Plaintiff, ) | |
| ) | **AFFIDAVIT OF JUSTIN SOUTHWARD** |
| vs. ) | |
| ) | |
| ClearObject, Inc. ) | |
| ) | |
| Defendant. ) | |

PERSONALLY APPEARED BEFORE ME, Justin Lee Southward, who being duly deposed and sworn says:

1. I am over the age of eighteen (18) years and am competent to make this affidavit. The information stated herein is true and correct based upon my personal knowledge, information, and belief.

2. I am currently the Chief Product Officer for Black Ink Technologies, Inc., a company related to the Plaintiff in this lawsuit, Paired Pay, Inc. (hereinafter "Paired Pay").

3. Paired Pay is in the process of developing a hardware and software business management model. Paired Pay contracted with ClearObject, Inc. (hereinafter "ClearObject") to collaboratively build this hardware and software.

4. Under the terms of the Contract between Paired Pay and ClearObject, ClearObject was obligated to provide a dedicated Product Team of full-time members working only on Paired Pay work.

5. During the Contract period, there was continuous member turnover on the ClearObject Product Team. As a result, ClearObject only provided a designated Product Team of members working just part-time on Paired Pay work, rather than the dedicated Product Team that Paired Pay contracted and paid for.

{01152693.DOCX.1 }

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

6. Paired Pay eventually objected to paying for the services that ClearObject failed to provide. In response, ClearObject "paused" communication with Paired Pay and its other development teams and is now refusing to produce its work product unless and until Paired Pay pays the full amount that ClearObject is demanding.

7. ClearObject is withholding environments, source code, and documentation from Paired Pay. This has severely impacted the development of several Paired Pay projects that were in various stages of development as well as the work of other development partners who were relying on ClearObject's work and communications. Paired Pay's staff and multiple other development teams have been stymied in their work because of ClearObject's refusal to deliver its work product.

8. I believe that Paired Pay has suffered irreparable harm from ClearObject's failure to deliver its work product and that Paired Pay will suffer further irreparable harm if ClearObject continues to withhold it. Our workflow is extremely time sensitive and ClearObject's actions have caused, and will continue to cause, extensive damage to Paired Pay's business.

9. Paired Pay has contracted with several other outside developers and contracted development teams to develop its product. Paired Pay's relationships with these other development teams are critical to Paired Pay's business and ClearObject's refusal to deliver its work product to Paired Pay could severely damage Paired Pay's business reputation and relationships with its current and prospective developers.

10. By contrast, ClearObject will suffer no harm if it is required to deliver its work product to Paired Pay. The parties will litigate the amount that is due under the contract, and ClearObject will be fully compensated for the services that it provided to Paired Pay.

{01152693.DOCX.1 }

FURTHER THE AFFIANT SAYETH NOT.

_____
Justin Lee Southward

Sworn to before me this
23 day of MARCH        , 2022

_____
Notary Public for the State of Florida
My Commission Expires:   MAY 27, 2023



HENRY RODRIGUEZ
Notary Public-State of Florida
Commission # GG 338981
My Commission Expires
May 27, 2023

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

EXHIBIT B



# Statement of Work:

Quantum Ledger Database Development and Managed Product
Team as a Service:
Paired Inc.

Version 2.3

January 8th, 2020

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

# 1   Introduction and Background

Paired Inc[TM], the "Subscriber", is a technology firm using a multi-pronged strategy to deliver automated site management and an industry-first record of all information and activities. SiteSUPER[TM] is an autonomous, intelligent & integrated project delivery system ensuring data security; workflow process and efficiency; and industry interoperability.  Working within residential construction, SiteSUPER[TM] eliminates major inefficiencies by using the most advanced technology to modernize every phase of construction.  The end product is a verifiable record of construction containing proof of every part installed, every person involved, and every related document.

ClearObject, the "Provider", is pleased to provide this statement of work for Product Team as a Service (PTaaS) professional services which reserves ClearObject resources for a set amount of capacity per sprint.  A ClearObject Product Owner will work with Subscriber SMEs to establish and maintain the product vision, product roadmap and backlog that will guide the development phase.  This proposal deck provides a summary of the potential future themes of the product and the pricing estimates to develop those as the product offering goes from pilot to production.

# 2   Objectives

This section describes the work to be provided by ClearObject and its sub-contractors ("Services") under the terms and conditions of the agreement identified in the signature block of this SOW, the "Agreement."  In addition, your responsibilities are listed.

Changes to this SOW will be processed in accordance with the procedure described in Appendix A: Project Change Control Procedure.  The investigation and the implementation of changes may result in modifications to the Estimated Schedule, Fees and Expenses, and other terms of this SOW.

# 3   Project Scope

In this project, ClearObject will:
- Develop and deploy a Quantum Ledger Database during a fixed cost, 2 month activity
- Deliver specific key deliverables outlines in a 3 month Milestone-based Development Plan
- Provide Product Team as a Service through an assigned, named Project Manager:
    - o   Project Manager will work with Subscriber to evaluate product backlog on a continuous basis each sprint in order to drive maximum value to Subscriber's team.



ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

- o  Project Manager will work with Subscriber to define an initial product release. Within that release product owner will agree with Subscriber on priority. Once feature priority has been agreed upon, the Project Manager will provide Subscriber with a forecast for delivering that release.
  - o  Release forecast and backlog will be used to provide updates at two-week or monthly intervals, per Subscriber's preference, on development status & remaining feature development during sprint cycles.
  - o  Provide ongoing development of Subscriber's digital product.
- ClearObject will provide application and infrastructure managed services
  - o  24 hours/7 days a week service desk support provided through: 1) online service portal, 2) email, and 3) phone support
  - o  Amazon Web Services (AWS) Support included
  - o  Provide ongoing administration, configuration, OS upgrades, and monitoring of Subscriber AWS projects
  - o  Perimeter security scans, security certificate installation, and SSL analysis
  - o  Architecture and deployment documentation provided and maintained
- ClearObject will provide AWS infrastructure resources
  - o  Subscriber project will be hosted and managed by ClearObject on AWS
  - o  AWS invoice provided monthly

## 4   Fees and Expenses

ClearObject will provide the required personnel to lead and develop Subscriber's digital product. The ongoing services include ClearObject's Product Team as a Service (PTaaS) team who will be engaged in product development activities as described below.

---

**Activity 1 – Quantum Ledger Database Development**

In this activity, ClearObject will perform services for a period of 2 months. Services include:

- Provide a fully managed ledger database that provides transparent, immutable and cryptographically verifiable transaction log.
- Provision a single instance of Quantum Ledger Database (QLDB) on the AWS platform
- Coordination with point of contact at Damal on key data integration
- Initiate engagement model and continue to support Activity 2 – Milestone Delivery Plan

Deliverables

- Define, design and document a data dictionary (with direction and input from the Subscriber)

---



ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

- Define, design and document an API to support 3rd party integration (utilizing AWS Lambda)Verify loading and the ability to query data within QLDB
- Deliver retrieval of a hash for verification purposes as defined by the Subscriber

**Fees:**

- $40,000
- 2 months in duration
- Subscriber to cover access/licencing costs associated with third-party API's

**Activity 2 –Monthly Recurring – Milestone-based Development Plan**

In this activity, ClearObject will perform services for a period of 3 months.  Services include:

- Delivery of Milestone-based Development Plan shown in Figure 1:



**Figure 1.  Milestone-based Delivery Plan**

- Provide ongoing product management services including, but not limited to story mapping, prototype development, backlog grooming, and bi-weekly development updates in support of Subscriber's MVP solution and subsequent releases.
- Provide software development and testing services
- Provide ongoing operational support of the application and cloud infrastructure

Deliverable Materials:
- Product artifacts such as but not limited to:
    - Clickable solution prototype
    - Architecture diagram
    - Release plan
    - Product roadmap
    - Data glossary
    - Cloud Environment



ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

   o CI/CD Pipeline

**Fees:**

- $35,000 per month
- 3 months in duration

### Activity 3 –Monthly Recurring – Product Team as a Service

In this activity, ClearObject will perform services for a period of 7 months. Services include:

- Provide dedicated product and development resources
- Provide ongoing product management services including, but not limited to story mapping, prototype development, backlog grooming, and bi-weekly development updates in support of Subscriber's MVP solution and subsequent releases.
- Provide software development and testing services

Deliverable Materials:
- MVP solution and subsequent releases
- Product artifacts such as but not limited to:
    - o Clickable Prototype
    - o Architecture Diagram
    - o Product Backlog
    - o Product Roadmap
    - o Product Release Plan

**Fees:**

ClearObject will provide a tiered pricing model for Activity 3.  Subscriber will specify the appropriate Product Team tier, based on desired development velocity:

| Product Team Tier | Monthly Fee |
|---|---|
| Start-up | $37,500 |
| Scale | $46,400 |
| Enterprise | $52,900 |

Unless otherwise specified by Subscriber, Product Team will be charged and operated at the 'Scale' tier.  Subscriber will be able to change Product Team tiers monthly with a 30 day notice period.



ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

**Activity 4 – Monthly Recurring - AWS Infrastructure Managed Services**

In this activity, ClearObject will:

- Provide AWS infrastructure metered charges per month
- Provide ongoing operational support of the application and cloud infrastructure

Deliverable Materials:
- AWS Usage Report

**Fees:**
- Metered AWS infrastructure usage charges per AWS pricing: https://aws.amazon.com/pricing/.
- $2,500 or 40% of actual AWS charges.  This fee is waved during the 12 month duration of this statement of work.

Payment schedule will be as follows:

| | |
|---|---|
| Monthly Fees for Activity 1: | $20,000 |
| Quantity of Payments for Activity 1: | 2 |
| Monthly Fees for Activity 2: | $35,000 |
| Quantity of Payments for Activity 2: | 3 |
| Monthly Fees for Activity 3 (based on Product Team Scale): | $46,400 |
| Quantity of Payments for Activity 3: | 7 |
| Monthly Variable Fees for Activity 4: | (based on usage) |

ClearObject will invoice monthly based on the invoice schedule for this SOW.  Amounts are due upon receipt of invoice and payable within 30 days.


# 5   Standard Business Practices

## 5.1   Change Control

If there are any changes to the presented scope of work for this project that are initiated by Subscriber before or during the process, deviations will be managed through the procedure described in Appendix A: Project Change Control Procedure, and may result in adjustments to the Project Scope, Estimated Schedule, Fees and Expenses and other terms of this SOW.  These adjustments may include additional charges on a time-and-materials or fixed-fee basis,



ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

determined and agreed upon by Subscriber at the time of change approval.

## 5.2   Disclosure

ClearObject never shares client information with outside parties without prior formal consent. The fully executed Subscriber and ClearObject Mutual Confidentiality NDA will apply to this SOW.

## 5.3   Standard Assumptions

The following are standard assumptions that are typical for a ClearObject engagement:

1. Subscriber will assign a Project Lead that will serve as key point of contact for communication, status, project tasks, etc.
2. All planned sprint activity will be reviewed with Subscriber and approved prior to the start of the sprint to ensure the available story points are utilized on activities aligned with Subscriber's business objectives.
3. Unless explicitly stated, all work is expected to be completed during normal business hours. Normal business hours are defined as between the hours of 8:00 am and 5:00 pm EDT, Monday through Friday, excluding federal holidays.
4. Work under this SOW will be performed at a Subscriber location and remotely.
5. Change Order requests will require a pre-approved budget to complete a brief impact analysis including the related work stream modifications and effort before a statement of change can be produced.

## 5.4   Laws, Regulations and Statutes

Subscriber is responsible for the identification of, interpretation of, and compliance with, any applicable laws, regulations and statutes that affect its applications or business.

ClearObject is responsible for the identification of, interpretation of, and compliance with, any applicable laws, regulations and statutes that affect its applications or business.

## 5.5   Data File Content and Security

Data at rest and in transit, once on the cloud platform, will be encrypted by the cloud platform provider. Subscriber is responsible for providing actual content of any data file, selection and changes. ClearObject is the data steward providing controls on the data access and use.



### 5.6 Additional Terms and Conditions

#### 5.6.1 Term and Termination

This Agreement shall commence on February 1st, 2021, the "Effective Date" and shall continue for a period of twelve (12) months (the "Initial Term") and shall automatically renew for successive twelve (12) month terms (each a "**Renewal Term**") unless Subscriber cancels such renewal upon not less than ninety (90) days prior written notice to Provider.  The Initial Term and any Renewal Term are collectively referred to as the "**Term**".

During the initial three (3) months, until April 30th, subscriber may cancel with no less than thirty (30) days prior written notice to Provider.

#### 5.6.2 Required Consents

Prior to making your facilities, software, hardware, networks or other similar resources available to ClearObject, you will promptly obtain any licenses or approvals necessary for ClearObject or its subcontractors to use, access and modify such resources to the extent necessary for ClearObject to perform the Services, including the development of any Materials. ClearObject will be relieved of its obligations to the extent your failure to promptly obtain such licenses or approvals adversely affect ClearObject's ability to perform its obligations.  If a third party asserts a claim against ClearObject as a result of your failure to promptly obtain these licenses or approvals, you agree to reimburse ClearObject for any costs and damages that ClearObject may reasonably incur in connection with such claim.

#### 5.6.3 Amazon Web Services Terms of Service

The terms under which Subscriber shall be entitled to use the Amazon Web Services platform are as set forth in the Amazon Web Services Service Terms, which are available at https://aws.amazon.com/service-terms/ and as may be amended by Amazon Web Services. Subscriber agrees to accept and comply with the then current Amazon Web Services Service Terms. The Services provided by Provider hereunder do not include any warranties of performance related to the Amazon Web Services Platform, and Provider shall not be liable for the operation, performance, or content of the Amazon Web Services Platform. Provider is authorized by Amazon Web Services to provide "standard support" for the Amazon Web Services Platform so long as Subscriber complies with the terms of this Agreement.

### 5.7 Completion Criteria

ClearObject will have fulfilled its obligations for the Services under this SOW when any one of the following first occurs:
   a. ClearObject provides the number of months specified in "Fees and Expenses" or in any subsequent Change Authorization

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462



b.  Subscriber or ClearObject terminates the project in accordance with the provisions of this Agreement

## 5.8   Schedule

Services for Activity 1 will be provided after mutual contract execution, between a start date of February 1st, 2021 and end date of no later than March 28, or on other dates mutually agreed to between ClearObject and Subscriber.

Services for Activity 2 will begin on the end date of Activity 1 and will last for a period of 3 months. Activity 3 will begin on the end date of Activity 2 and will renew after an initial 7 months unless cancelled by Subscriber.

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462



## 6   Approvals

Each of us agrees that the complete agreement, which replaces any prior oral or written communications between us regarding this transaction, consists of the Statement of Work and its Appendices.

In entering into this SOW, Subscriber is not relying upon any representation made by or on behalf of ClearObject that is not specified in this SOW, including, without limitation, the actual or estimated completion date, number of hours to provide any of the services, charges to be paid, or the results of any of the services to be provided under this SOW.

An authorized signature on this page by you indicates you have the authority to enter into this agreement and your acceptance of this Statement of Work as a binding agreement.

<table>
<tr><td>Agreed to:<br>Paired Inc.<br>3900 Leeds Avenue, Suite 102<br>North Charleston, SC 29403</td><td>Agreed to:<br>ClearObject Inc.<br>8626 E. 116th St<br>Fishers, IN 46038</td></tr>
<tr><td>By:</td><td>By:</td></tr>
<tr><td>_____<br>Authorized signature</td><td>_____<br>Authorized signature</td></tr>
<tr><td>**Executive Advisor**<br>_____<br>Title</td><td>VP of Digital Products<br>_____<br>Title</td></tr>
<tr><td>**Justin Southward**<br>_____<br>Name (type or print)</td><td>Benjamin E. Frame<br>_____<br>Name (type or print)</td></tr>
<tr><td>**January 8, 2021**<br>_____<br>Date</td><td>January 11, 2021<br>_____<br>Date</td></tr>
</table>

ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462



ELECTRONICALLY FILED - 2022 Mar 25 2:13 PM - CHARLESTON - COMMON PLEAS - CASE#2022CP1000462

## Appendix A:    Project Change Control Procedure

The following process will be followed if a change to this SOW is required.

a.  ClearObject and Subscriber may determine that it is necessary to exceed the scope and/or number of estimated hours for the Services as stated in "Fees and Expenses." In such event, Subscriber may authorize additional hours and funding by the written request of your SOW signatory. The request must reference the SOW number. Through the end of the calendar year (i.e., December 31) during which this SOW is originally executed, additional hours, funding, and End-Date extension may be requested in writing, at the originally contracted hourly rate, specified in "Fees and Expenses." If accepted or initiated by ClearObject, such letter or e-mail will act as a change authorization to this SOW. All other requested changes will require execution of a Project Change Request as discussed below.

b.  A Project Change Request (PCR) will be the vehicle for communicating change. The PCR must describe the change, the rationale for the change and the effect the change will have on the project.

c.  A PCR must be signed by authorized representatives from both parties to authorize implementation of the change. Until a change is agreed to in writing, both parties will continue to act in accordance with the latest agreed version of the SOW.

Illustration 1 – Sample Project Change Request Form

