# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Paired Pay, Inc., ) | Civil Action No. 2:22-cv-1013-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ClearObject, Inc., ) | **ORDER AND OPINION** |
| ) | |
| Defendant. ) | |
| _____ ) | |

Before the Court is Defendant's motion to dismiss or transfer venue (Dkt. No. 9). For the reasons set forth below, the Court rules as follows.

## I.  Background

This is a breach of contract dispute between Plaintiff Paired Pay, Inc. and Defendant ClearObject, Inc. Plaintiff, a Wyoming corporation with its principal place of business in the State of South Carolina, alleges that it and Defendant, a Delaware corporation with its principal place of business in Indiana, entered into a Statement of Work ("SOW") in January 2021, which was modified by a Project Change Request in July 2021 (the "July Change Request"). Plaintiff alleges Defendant breached the July Change Request. *See* (Dkt. No. 1-1).

On January 31, 2022, Plaintiff filed this action in the Court of Common Pleas for Charleston County. On March 30, 2022, Defendant removed this action. (Dkt. No. 1).

Defendant moves to dismiss the complaint or transfer venue. (Dkt. Nos. 9, 13). Plaintiff opposes. (Dkt. Nos. 12, 17). At the Court's request, the parties briefed the applicability of the first to file rule to this action. (Dkt. Nos. 18, 19).

Defendant's motion is fully briefed and ripe for disposition.

## II.  Legal Standard

1

When a court's personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), the burden is on the plaintiff to establish that a ground for jurisdiction exists. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When the court resolves the motion on written submissions (as opposed to an evidentiary hearing), the plaintiff need only make a "prima facie showing of a sufficient jurisdictional basis." *Id.* However, the plaintiff's showing must be based on specific facts set forth in the record. *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992). The Court may consider the parties' pleadings, affidavits, and other supporting documents but must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in his favor, and assuming plaintiff's credibility." *Sonoco Prods. Co. v. ACE INA Ins.*, 877 F. Supp. 2d 398, 404–05 (D.S.C. 2012) (internal quotation and alteration marks omitted); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) ("In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff"). However, a court "need not credit conclusory allegations or draw farfetched inferences." *Sonoco*, 877 F. Supp. 2d at 205 (internal quotation marks omitted). Whenever a defendant's sworn affidavit contests the allegations in the complaint, the plaintiff can no longer rest on those allegations. *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 835 (D.S.C. 2015). Instead, the plaintiff bears the burden to present an affidavit or other evidence showing jurisdiction exists over the non-resident defendant. *Id.*

To meet their burden, Plaintiffs must show (1) that South Carolina's long-arm statute authorizes jurisdiction, and (2) that the exercise of personal jurisdiction complies with the constitutional due process requirements. *E.g.*, *Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). South Carolina has interpreted its long-arm

statute to extend to the constitutional limits of due process. *See S. Plastics Co. v. S. Commerce Bank*, 423 S.E.2d 128, 130–31 (S.C. 1992). Thus, the first step is collapsed into the second, and the only inquiry before the court is whether the due process requirements are met. *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 (D.S.C. 1999); *Sonoco Prods. Co. v. Inteplast Corp.*, 867 F. Supp. 352, 352 (D.S.C. 1994).

Due process requires that a defendant have sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). This standard can be met in two ways: "by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711–12 (4th Cir. 2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). To determine whether specific jurisdiction exists, the Court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Md.*, 334 F.3d at 397. (internal citations omitted). In other words, the defendant must have "minimum contacts" with the forum, the cause of action must arise from those contacts, and the exercise of personal jurisdiction must be reasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–76 (1985).

Courts evaluate the reasonableness of personal jurisdiction by considering a variety of factors including: "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering substantive social policies." *Lesnick*

*v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994). "Minimum contacts" and "reasonableness" are not independent requirements; rather, they are aspects of the requirement of due process, and thus "considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King*, 471 U.S. at 477.

### III. Discussion

Defendant moves to either dismiss this action for lack of personal jurisdiction or transfer this case to the District of Indiana pursuant to 28 U.S.C. § 1391. In its opposition, Plaintiff argues that because Defendant removed this case to federal court, it cannot move to transfer venue pursuant to § 1391. *See Red Bone Alley Foods, LLC v. Nat'l Food & Bev., Inc.*, No. 4:13-cv-3590-PMD, 2014 U.S. Dist. LEXIS 33153, at *19 (D.S.C. Mar. 14, 2014) ("[O]nce a case is properly removed to federal court, a defendant cannot move to dismiss on § 1391 venue grounds.") *citing Motley Rice, LLC v. Baldwin & Baldwin, LLP*, 518 F. Supp. 2d 688, 697 (D.S.C. 2007). In its reply, Defendant does not contest this assertion. *See* (Dkt. No. 13). Accordingly, the Court only considers whether personal jurisdiction is lacking and whether the first to file rule applies.

Construing the evidence before it in a light most favorable to Plaintiff, the Court finds as follows. In January 2020, Ron Felice, a former employee of Defendant who lived in Summerville, South Carolina, solicited Black Ink Technologies Corporation ("Black Ink")'s business on behalf of Defendant. Affidavit of Jeremy Blackburn, CEO of Black Ink Technologies Corporation, (Dkt. No. 12-1 ¶ 16). Black Ink is the parent company of Paired, Inc. and Plaintiff Paired Pay, Inc. (*Id.* ¶ 1.).[1] Felice's solicitation occurred in person at Black Ink's North Charleston offices. (*Id.* ¶ 17).

---

[1] As discussed *infra*, Paired Pay, Inc. was formed around February 12, 2021. (Dkt. No. 17-1 ¶ 33).

Before Felice contacted Black Ink, Black Ink did not have any contact or business arrangement with Defendant. (*Id.* ¶ 18). Around January 16, 2020, Felice physically visited Black Ink's offices and "whiteboarded" with Black Ink's personnel regarding "the design and architecture details of the development work that [Defendant] contracted to provide." (*Id.* ¶ 19); (*Id.* ¶ 20) (stating that Felice "visited [Black Ink's] offices on at least one additional occasion in 2020" but providing no further detail). On March 31, 2020, Defendant furloughed Felice and, on June 24, 2020, laid Felice off. Affidavit of Chuck Scullion, COO of ClearObject, Inc., (Dkt. No. 13-3 ¶¶ 1-3). During his time with Defendant, Felice secured a Nondisclosure Agreement between Defendant and Black Ink. (Dkt. No. 13-1) (NDA dated February 3, 2020); Supplemental Affidavit of Jeremy Blackburn, (Dkt. No. 17-1 ¶ 10). As a result of the connection established by Felice, Defendant "sent a number of proposals to do work for Black Ink Tech Product Companies or Platform Companies." (Dkt. No. 17-1 ¶ 11); (*Id.* ¶ 7) (noting Black Ink offers products through Product Companies or Platform Companies such as Paired and Plaintiff Paired Pay, Inc.); (*Id.* ¶¶ 8, 9) (noting Paired Pay has "no employees" because Black Ink's employees perform tasks on Plaintiff's behalf, that said employees all have Black Ink domain email addresses because Paired Pay email addresses do not exist, and that Defendant "sent hundreds of emails, calendar invitations . . . to Black Ink Tech employees"); *see also* (Dkt. No. 13-2 at 1) (Feb. 28, 2020 pitch from Defendant to Black Ink for SiteSuperTM, a Black Ink Product Company). Plaintiff notes that the initial SOW contemplated work for both Paired Inc. and SiteSuper, (Dkt. No. 1-1 at 9), and that a proposal which "would ultimately lead to the July Change Request at the heart of this litigation" shows Defendant "touting its [v]ery effective collaboration between ClearObject, REDYREF [a company which manufactured a kiosk into which the database Defendant allegedly contracted with Plaintiff to build would be inserted], and Black Ink Teams." (Dkt. No. 17-1 ¶ 15); (Dkt. No. 17-2 at 3) (March

5

31, 2021 Defendant Proposal). Plaintiff notes that around March 31 and April 1, 2021, two of Defendant's representatives, Scott Herren and Noel Hopkins, met with Plaintiff/Black Ink to discuss an expansion of the SOW's "Quantum Ledger Database Development" activity and "Management Product Team as a Service" activity. (Dkt. No. 12-1 ¶ 29) (noting Plaintiff did not request Herren and Hopkins travel to South Carolina and that both traveled at Defendant's expense). These discussions continued remotely and resulted in the July Change Request. (*Id.* ¶¶ 31-32); *see* (Dkt. No. 17-1 ¶ 27) (noting that the initial drafts of the SOW listed Black Ink as Defendant's counterparty but that, "consistent with Black Ink Tech's standard practice, ClearObject's engagement would not be with Black Ink Tech, but with a Platform Company that Black Ink Tech would create for purposes of the engagement," in this case Paired); (*Id.* ¶¶ 33-35) (noting that Black Ink formed Paired Pay around February 12, 2021, that it did so "specifically for the engagement with [Defendant]," that at Black Ink's request Defendant changed the "identify of its counterparty in the April Change[] Request from Paired to Paired Pay" and that Black Ink paid Defendant pursuant to the SOW and the two Change Requests "at the request and on behalf of Paired and/or Paired Pay").

To determine whether specific jurisdiction exists, the Court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Carefirst of Md.*, 334 F.3d at 397 (internal citations omitted).

In determining whether a defendant has purposely availed itself of the privilege of conducting business in a State, the Fourth Circuit has identified numerous nonexclusive factors to be considered, such as (1) whether the defendant maintained offices or agents in the State; (2)

6

whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted. *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198–99 (4th Cir. 2018)

  The Court finds that it has personal jurisdiction over Defendant. Factors 1, 3, 6, and 8 weigh in favor of jurisdiction. As established above, Defendant had an agent, Felice, who lived and worked in South Carolina and who, on behalf of Defendant, directly solicited Plaintiff's business here in South Carolina. Similarly, Defendant made various in-person contacts with Plaintiff to initiate and develop a business relationship which led directly to the July Change Request. *See CFA Institute v. Institute of Chartered Financial Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009) (personal jurisdiction existed over defendant where it contacted the plaintiff, which "sparked ongoing business transactions, by which [defendant] repeatedly reached into Virginia to transact business with [plaintiff], invoking the benefits and protections of Virginia law"). That Plaintiff is a separate entity from Black Ink is of no consequence given that, reading all facts in a light most favorable to Plaintiff, Defendant was clearly aware of the relationship between Black Ink and Plaintiff and knew, in soliciting business form Black Ink, that this work was in fact for Black Ink Product or Platform Companies such as Plaintiff. *See generally* (Dkt. No. 17-1). Accordingly, the Court finds that Defendant purposely availed itself of the privilege of conducting activities in South Carolina and that Plaintiff's claims arose from those contacts.

Further, the parties' briefing shows that there is no dispute that exercising personal jurisdiction over Defendant is constitutionally reasonable. *See Conrad v. Benson*, No. 9:20-CV-1811-RMG, 2020 WL 4754332, at *2 (D.S.C. Aug. 14, 2020) (courts evaluate reasonableness by considering "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering substantive social policies.") *citing Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994). Here, personal jurisdiction is reasonable given Defendant choose to solicit business in South Carolina with a company with its principal place of business in this state. Thus, the prospect of litigation in South Carolina was foreseeable. Further, South Carolina has a substantial interest in resolving the grievances of its citizens. Last, Defendant has not demonstrated that it is disadvantaged by litigating this lawsuit in South Carolina. In sum, exercising jurisdiction over Defendant is reasonable. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012) (a "corporate defendant's domicile abroad, standing alone, does not render domestic exercise of jurisdiction unduly burdensome").

The remaining issue before the Court is whether the first to file rule applies to this case.

The first-to-file rule provides that "when multiple suits are filed in different Federal courts upon the same factual issues, the first or prior action is permitted to proceed to the exclusion of another subsequently filed." *Allied–Gen. Nuclear Servs. v. Commonwealth Edison* Co., 675 F.2d 610, 611 n. 1 (4th Cir.1982) (citing *Carbide & Carbon Chems. Corp. v. U.S. Indus. Chems., Inc.,* 140 F.2d 47, 49 (4th Cir.1944)). In general, "the first suit should have priority, absent the showing of balance of convenience in favor of the second action." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.,* 386 F.3d 581, 594–95 (4th Cir.2004) (quoting *Ellicott Mach. Corp.*

8

*v. Modern Welding Co., Inc.,* 502 F.2d 178, 180 n. 2 (4th Cir.1974)). When a case falls within the ambit of the first-to-file rule, courts generally will stay, dismiss, or transfer the second-filed case. *Harris v. McDonnell,* C/A No. 5:13–cv–00077, 2013 WL 5720355, at *3 (W.D.Va. Oct.18, 2013).

"The policy underlying the first-to-file rule is the avoidance of duplicative litigation and the conservation of judicial resources." *Id.* (citation omitted). "Application of the rule is discretionary, not mandatory." *Id.* (citation omitted). The Fourth Circuit "has no unyielding 'first-to-file' rule." *CACI Int'l, Inc. v. Pentagen Techs. Int'l, Ltd.,* 70 F.3d 111, 1995 WL 679952, at *6 (4th Cir.1995) (unpublished) (citing *Carbide,* 140 F.2d at 49 ("[T]he pendency of a prior suit involving the same issues does not require the dismissal of a suit for declaratory judgment.")).

"The rule is not absolute and is not to be mechanically applied; ultimately, invoking the first-to-file rule is an equitable, case-by-case, discretionary determination." *Harris,* 2013 WL 5720355, at *3 (citation omitted). "Furthermore, exceptions to the rule are common 'when justice or expediency requires.'" *Id.* (citation omitted).

"Procedurally, the court first considers whether the two competing actions are substantively the same or sufficiently similar to come within the ambit of the first-to-file rule." *Id.* "If they do, the court then considers whether any exception to the rule should be applied." *Id.* (citation omitted). "To determine if there is sufficient similarity to bring the first-to-file rule into play, courts have considered three factors: (1) the chronology of the filings, (2) the similarity of the parties involved, and (3) the similarity of the issues at stake." *Id.* (citations omitted). "The actions being assessed need not be identical if there is substantial overlap with respect to the issues and parties." *Id.* (citation omitted).

9

"One final factor courts use in considering the applicability of the first-to-file rule is 'whether the balance of convenience weighs in favor of allowing the second-filed action to proceed.'" *Id.* at *5 (citation omitted). In determining the balance of convenience, courts look to the same factors relevant to transfer of venue pursuant to 28 U.S.C. § 1404(a). *Nexsen Pruet, LLC v. Westport Ins. Corp.,* C/A No. 3:10–895–JFA, 2010 WL 3169378, at *2 (D.S.C. Aug.5, 2010) (citations omitted). These factors are: "(1) the ease of access to the sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the possibility of a view by the jury; (6) the interest in having local controversies decided at home; and (7) the interests of justice." *Id.* (citing *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Landers v. Dawson Constr. Plant, Ltd.,* 201 F.3d 436 (4th Cir.1999) (unpublished table decision)). The moving party bears the burden of clearly establishing that these factors favor transfer. *Id.* (citation omitted).

Here, Defendant undisputedly filed a substantively similar action in Indiana state court on January 27, 2022, which was later removed to federal court. *See ClearObject, Inc. v. Paired & Paired Pay, Inc.*, No. 1:22-cv-581 (D. Ind.). Four days later, on January 31, 2022, Plaintiff filed the instant action in South Carolina state court which was also later removed to federal court.

Currently the Court declines to consider application of the first to file rule. In *ClearObject, Inc. v. Paired & Paired Pay, Inc.*, No. 1:22-cv-581 (D. Ind.), Plaintiff and Paired have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(3), which the Indiana court has yet to rule on. Given this fact, the Court declines to consider currently whether to transfer this action to a district which, itself, might elect to transfer its own action to this Court. The Court directs the parties, however, to immediately inform the Court by way of a joint status report of the

Indiana Court's decision on the pending motion to dismiss or transfer. At that time, to the extent parallel proceedings are pending in federal court, the Court will consider any appropriate action.

### IV.    Conclusion

For the reasons stated above, Defendant's motion to dismiss or transfer venue (Dkt. No. 9) is **DENIED**.

**AND IT IS SO ORDERED**.

s/ Richard M. Gergel  
Richard M. Gergel  
United States District Judge

June 14, 2022  
Charleston, South Carolina