# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| PAIRED PAY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| Counterclaim Defendant, ) | Case No. 2:22-CV-1013-RMG |
| ) | |
| v. ) | |
| ) | **ORDER AND OPINION** |
| CLEAROBJECT, INC., ) | |
| ) | |
| Defendant, ) | |
| Counterclaim Plaintiff, ) | |
| Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BLACK INK TECHNOLOGIES CORP., ) | |
| f/k/a BLACK INK TECHNOLOGIES, LLC, ) | |
| and PAIRED, INC. ) | |
| ) | |
| Third Party Defendants. ) | |

Before the Court is Defendant ClearObject's motion for judgment as a matter of law. (Dkt. No. 192). Plaintiff and Third-Party Defendants (the "Paired Entities") responded (Dkt. No. 194), and ClearObject replied (Dkt. No. 196). For the reasons set forth below, the Court denies ClearObject's motion.

**I.     Background**

On July 17, 2024, an eight-person jury returned a unanimous verdict finding Defendant ClearObject liable to the Paired Entities for breach of contract and breach of contract accompanied by a fraudulent act. (Dkt. No. 181). The jury awarded $502,420.00 in actual damages to the Paired Entities but declined to grant punitive damages. (Dkt. Nos. 181, 184).

1

## II.     Legal Standard

A movant is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) "if a reasonable jury could only reach one conclusion based on the evidence or if the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489 (4th Cir. 2005); *see also Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1189 (4th Cir. 1990) ("[Judgment notwithstanding the verdict] should not be granted unless the evidence is so clear that reasonable men could reach no other conclusion than the one suggested by the moving party."). This standard is satisfied "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." *Wheatley v. Wicomico Cnty., Md.*, 390 F.3d 328, 332 (4th Cir. 2004) (quoting *Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995)).

In evaluating a motion for judgment as a matter of law, "[t]he evidence and all reasonable inferences from it are assessed in the light most favorable to the non-moving party, and the credibility of all evidence favoring the non-moving party is assumed." *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 160 (4th Cir. 1988); *see also Konkel v. Bob Evans Farms, Inc.*, 165 F.3d 275, 279 (4th Cir. 1999) (stating that a Rule 50 motion should be granted "if a district court determines, without weighing the evidence or considering the credibility of the witnesses, that substantial evidence does not support the jury's findings."). If there is any evidence on which a reasonable jury could return a verdict in favor of the nonmoving party, judgment as a matter of law should not be granted. *Price*, 93 F.3d at 1249. "If reasonable minds could differ, [the court] must affirm the jury's verdict." *Pitrolo v. Cnty. of Buncombe*, 407 Fed.Appx. 657, 659 (4th Cir. 2011) (citing *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 645 (4th Cir. 2002)).

**III.     Discussion**

ClearObject asserts four bases on which this Court should overturn the jury's verdict and grant judgment as a matter of law to ClearObject on its breach of contract counterclaim. The Court discusses each claim in turn.

**A.  Causal Link Between ClearObject's Alleged Breach and Purported Damages**

ClearObject argues it is "entitled to judgment as a matter of law in its favor on each of Paired Pay's claims against it because Paired Pay's alleged damages are not the proximate result of the alleged breach." (Dkt. No. 192 at 4-5). Per ClearObject, Paired Pay's damages "arise solely from ClearObject's decision to withhold the work product due to Paired Pay's failure to pay over $360,000." (*Id.* at 4).

In response, Paired Pay cites evidence it presented at trial regarding the causal link between ClearObject's alleged breach (its failure to provide "a dedicated Product Team to provide development services until the end of the contract period") and the damages awarded by the jury ($502,420.00), the full extent of the actual damages claimed by the Paired Entities. (Dkt. No. 194 at 3). Paired Pay CEO Jeremy Blackburn testified that Paired Pay entered into a Product Team as a Service (PTaaS) contract pursuant to which ClearObject was obligated to provide software development services throughout the life of the contract, at the end of which a final product would be delivered to the Paired Entities. (*Id.* at 3-4). The $502,420.00 that Paired Pay paid ClearObject was evidenced by invoices presented to the jury at trial. (*Id.* at 4). There is sufficient evidence supporting the jury's finding of a causal connection between the alleged breach and the damages incurred by the Paired Entities—the payments made by Paired Pay to ClearObject for a non-dedicated product team. The Court denies Paired Pay's motion on this basis.

### B. Materiality of Breach

ClearObject argues that "[b]ecause there is insufficient evidence as a matter of law to support the jury's finding that ClearObject committed a material breach [] ClearObject is not only entitled to a verdict in its favor on Paired Pay's claims, but also on its claim for breach of contract against the Paired Entities." (Dkt. No. 192 at 8). Specifically, ClearObject claims it is immaterial whether or not the Project Team was "dedicated" where it timely completed the contracted-for software code, which it only withheld due to the cessation of payments by the Paired Entities (itself a material breach). (*Id.*). Paired Pay maintains that the makeup of the product team was material to the contract, highlighting Jeremy Blackburn's testimony that ClearObject's "representations regarding the benefits and value of having a dedicated Product Team was extremely enticing to Paired Pay" and explaining that "because the terms of the contract provided for a Product Team as a Service for a period of seven months, then ClearObject's work, by definition, was completed at the end of those seven months" rather than "tied to the delivery of a specifically defined product." (Dkt. No. 194 at 5-6). Paired Pay also cites communications between ClearObject and the Paired Entities supporting Paired Pay's understanding that "dedicated" signified "individuals working full-time, only on Paired Pay's work" as well as promotional materials by ClearObject exhorting the benefits of retaining a Product Team as a Service. (*Id.* at 5-6). This is sufficient evidence upon which a reasonable jury could return a verdict in favor of the Paired Entities. The Court denies Paired Pay's motion on this basis.

### C. Mitigation of Damages

ClearObject argues that Paired Pay failed to mitigate its damages and as a result is barred from recovering any damages. (Dkt. No. 192 at 10). Per ClearObject, "ClearObject continued to

issue invoices to Paired Pay, but Paired Pay never indicated it would not pay them nor did it instruct ClearObject to stop working." (Dkt. No. 196 at 3).  Per ClearObject, "[I]f Paired Pay had paid, ClearObject would have delivered all of the work" so "Paired Pay's damages were entirely avoidable had it taken the reasonable step to pay the amount owed under the parties' Contract." (Dkt. No. 192 at 9-10).  ClearObject's argument ignores that the contract breach alleged by Paired Pay is not the withheld source code, but that the product team it had been assigned was not "dedicated" in line with the contract's terms.  As a result, Paired Pay contends that the jury was "entitled to find that paying more than $360,000 for work that had not been performed would have been an unreasonable expense to incur in an effort to mitigate damages." (Dkt. No. 194 at 8).  The Court agrees and denies ClearObject's motion on this basis.

### D.  Insufficient Evidence of Fraud

ClearObject argues there was insufficient evidence on which a reasonable jury could find ClearObject liable for breach of contract accompanied by a fraudulent act. (Dkt. No. 192 at 11).  It explains that ClearObject's filing of a lawsuit to collect the outstanding amounts owed "is insufficient evidence, as a matter of law, to establish clear and convincing fraudulent intent" as is "an internal email between ClearObject employees that suggested one of ClearObject's most senior software developers, Aaron Nall, should 'spend enough time with Black Ink to look/feel like full time'" because that email was not shared with the Paired Entities.  (*Id.* at 11-12).  Further, ClearObject maintains that, because Mr. Scullion did not know of the competing definition of "dedicated" at the time of a recorded phone conversation with Mr. Blackburn, "a reasonable jury could not find by clear and convincing evidence that Mr. Scullion harbored fraudulent intent." (*Id.* at 12-13).  The Court considers that, based upon the foregoing cited evidence, a reasonable jury could determine that ClearObject acted with fraudulent intent to

5

deceive Paired Pay into believing it had assigned a dedicated team to Paired Pay project. The Court denies ClearObject's motion on this basis.

Because the Court does not grant judgment as a matter of law to ClearObject on its breach of contract counterclaim, the Court need not reach ClearObject's argument that the Paired Entities are alter egos of each other. (*See id.* at 13-16).

## IV.     Conclusion

In light of the foregoing, ClearObject's motion for judgment as a matter of law is **DENIED**.

**AND IT IS SO ORDERED.**

s/ Richard M. Gergel
Richard Mark Gergel
United States District Judge

September 19, 2024
Charleston, South Carolina